RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

NITHYA SENRA, CA SBN 291803
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
Telephone:    (202) 307-6570
Facsimile:     (202) 307-0054
E-mail:         nithya.senra@usdoj.gov

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
*Of Counsel*

*Attorneys for the United States of America*

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. |
| Plaintiff, | COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF |
| v. | |
| Alfred George Decker, an individual, and Accountable Business Services, Inc., | |
| Defendants. | |

Plaintiff, the United States of America, by and through undersigned counsel, complains and alleges as follows:

1.     This is a civil action brought by the United States of America under 26 U.S.C. §§ 7402(a) and 7407 to permanently enjoin Alfred George Decker ("Mr. Decker") and Accountable Business Services, Inc. ("ABS"), and anyone in active concert or participation with them, from:

        a.   acting as a federal tax return preparer or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

1

b. Preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;

c. Owning, operating, managing, working in, investing in, providing capital or loans to, consulting with, or franchising a tax return preparation business;

d. Maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

e. Engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, or any other penalty provision in the Internal Revenue Code (26 U.S.C. § 7407(b)(1)(A)); and

f. Engaging in any other fraudulent or deceptive conduct which substantially interferes with the proper administration and enforcement of the Internal Revenue laws (26 U.S.C. § 7407(b)(1)(D)).

## AUTHORIZATION

2.    This action has been authorized, and requested by, the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of Treasury, and is brought at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402 and 7407.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § § 7402(a).

4.    Venue is proper in this Court pursuant to 26 U.S.C. § 7407(a) and 28 U.S.C. § 1391(b) because Mr. Decker resides in Maricopa County, defendant Accountable Business Services maintained its principal place of business in Gilbert, Arizona, and a substantial part of the events or omissions giving rise to this action occurred in the district.

//

**DEFENDANTS**

5.     Defendant Alfred George Decker resides in Maricopa County, Arizona.

6.     Defendant Accountable Business Services, Inc. ("ABS") is an Arizona Corporation, owned by Mr. Decker and his wife, Cheryl Dee Decker ("Mrs. Decker"), and is the corporate entity that owns the return preparation store known as "Accountable Business Services" located in Gilbert, Arizona. "Accountable Business Services" is the registered trade name of Accountable Business Services, Inc.

**BACKGROUND**

7.     Mr. Decker is not professionally certified as a return preparer. He graduated from college in 1974 with an accounting degree and worked for a small CPA firm for approximately one year. He worked at that firm during a single tax season. After leaving the CPA firm, Mr. Decker worked full-time as a Farmers Insurance agent until 2001.

8.     Decker Enterprises, Inc., owned by Mr. Decker and his wife, was the initial corporate entity to operate the tax return preparation store known as Accountable Business Services, which began operating in 1982, and had initially registered the "Accountable Business Services" trade name. Mr. Decker prepared returns at this store on a part time basis until 2001.

9.     In 2001, Mr. Decker began preparing returns full time at Accountable Business Services, the tax-return preparation store in Gilbert, Arizona. Over the years, many of Mr. Decker's family members also worked at the tax-return preparation store, including Mrs. Decker, and a number of their adult children.

_State of Arizona Investigation and Criminal Conviction_

10.     The State of Arizona conducted an examination of returns prepared by Mr. Decker, and initiated a criminal action against Mr. Decker for fraudulently preparing state tax returns. In an indictment issued on September 13, 2007, the State of Arizona charged

Mr. Decker with over 50 criminal counts, including Fraudulent Schemes and Artifices (a class 2 felony) and Fraudulent Preparation of an Income Tax Return (a class 5 felony), as well as forgery and identity theft. *See* Indictment dated September 13, 2007, *State of Arizona v. Alfred George Decker, Cheryl Dee Decker, et. al.,* CR2007-008286, Superior Court of Arizona, Maricopa County. A number of Mr. Decker's family members were also charged with various tax fraud related counts in that same indictment, including Mrs. Decker, the couple's four adult children, a nephew, and Mr. Decker's brother.

11.     On April 1, 2008, Mr. Decker pleaded guilty to Count 1 Fraudulent Schemes and Artifices (class 2 felony) (A.R.S. § 13-2310, 13-701, 13-702.01 and 13-801) and guilty to Count 5 Fraudulent Preparation of an Income Tax Return (class 5 felony) (A.R.S. § 42-1127, 13-701, 13-702, 13-702.01 and 13-801).

12.     On August 6, 2008, the Superior Court sentenced Mr. Decker to be incarcerated in county jail for 12 months, and then suspended the sentence and granted Mr. Decker probation for a term of seven years (7 years for Count 1, 3 years for Count 5, both probation terms running concurrently).  The Superior Court also ordered Mr. Decker and Mrs. Decker (CR 2007-008286-002 SE) to pay restitution of $2,000,000.00 to the Arizona Department of Revenue.

*Tax Preparation with Accountable Business Services, Inc.*

13.     In 2007, around the time of the State of Arizona's criminal action discussed above, Decker Enterprises, Inc. was administratively dissolved, but Mr. Decker and his wife continued to operate the same return preparation store known as Accountable Business Services.

14.     On December 15, 2010, Mr. Decker and his wife incorporated Accountable Business Services, Inc. which registered the trade name Accountable Business Services, and continued to operate the tax return preparation store located in Gilbert, Arizona.

15.    While Mr. Decker was on probation for his conviction involving the State of Arizona, he continued to prepare tax returns for his customers at ABS that understated customers' tax liabilities.

16.    In 2014, the Internal Revenue Service opened an investigation of Mr. Decker and ABS, and found that Mr. Decker and ABS prepared returns that understated tax liabilities based on unreasonable positions for which there was not substantial authority, and/or the understatements were made willfully, and/or the understatements were made recklessly or with an intentional disregard of rules or regulations, which is conduct subject to penalty pursuant to 26 U.S.C. § 6694.

17.    For the years 2011 thru 2015, ABS and Mr. Decker participated in the preparation and filing of 7,153 individual income tax returns and 1,206 entity returns (trusts, partnerships, C-corporations, S-corporations), for a total of 8,359 tax returns. These returns had a refund rate in excess of 70% and claimed the Earned Income Tax Credit (EITC) over 20% of the time.

18.    Mr. Decker and ABS operate largely by referral and have about 2,500 customers.

19.    The number of tax returns filed with Mr. Decker's Preparer Tax Identification Number ("PTIN") has ranged from 1,512 to 1,926 from the year 2011 to 2016.

20.    Either Mr. Decker's PTIN was listed on each of the returns prepared by ABS, or the returns were signed by Mr. Decker with a fabricated PTIN to evade detection by the IRS that he was the return preparer. The use of a fabricated PTIN is conduct subject to penalty pursuant to 26 U.S.C. § 6695.

21.    During the years 2008 through 2016, the IRS audited 1,454 tax returns prepared by ABS and Mr. Decker, and made adjustments in over 80% of the audits.

22.     Notwithstanding the State of Arizona criminal conviction, including imposition of $2,000,000 in restitution, and specific warnings from the IRS, Mr. Decker and ABS continued to prepare and file income tax returns for their customers that took unreasonable and unjustified positions. The following examples demonstrate a pattern of abuse and misconduct that warrants an injunction barring Mr. Decker and ABS from preparing tax returns. To protect the privacy of the taxpayers discussed in these examples, they are identified by number (i.e., Customer 1).

*Customer 1*

23.     Mr. Decker prepared returns for Customer 1, an individual who ran a professional practice, for multiple years utilizing an elimination of income scheme that used two related business entities (Entity A and B) to hide income.

24.     Mr. Decker and ABS prepared returns for Customer 1 that took unreasonable positions, willfully attempted to understate tax liabilities, or recklessly or intentionally disregarded rules or regulations.

25.     Mr. Decker prepared returns for Customer 1, Entity A (professional practice wholly owned by Customer 1), and Entity B (management consulting firm wholly owned by Customer 1). Entity A ostensibly paid Entity B management fees for purportedly providing billing related support for Customer 1's professional practice.

26.     The returns prepared for both Entity A and Entity B frequently claimed personal expenses as business expenses, essentially zeroing out large amounts of taxable income. For example, Entity A claimed the following as business expenses: (1) payments for the personal residential mortgage of Customer 1, categorized as a "rent" expense; (2) payments for home improvement expenses for the personal residence categorized as "repair and maintenance" expenses; (3) payments for Customer 1's gym membership categorized as "dues and subscriptions" for the business; (4) payments related to a family

dog was categorized as business "security expenses"; (5) payments for personal groceries, categorized as "office expenses" or "office supplies"; and (6) personal student loan payments for education in prior years, categorized as a "training/continuing education" business expense. Additionally, Entity B claimed as "employee benefits" what were in fact transfers of tens of thousands of dollars to Customer 1's personal investment account, and also claimed a "rent expense" for payments of the residential mortgage of Customer 1's home. Entity B improperly claimed payments for personal expenses as repair and maintenance business expenses as well.

27.     The returns prepared by Mr. Decker for Entity A and Entity B ignored basic tax law, by improperly claiming personal expenses as business deductions. For example, the returns improperly claimed payments for personal vehicles (not used for business) as a business expense, improperly deducted Customer 1's student loan payments (both principal and interest were deducted) as a business expense, and ignored the 50% limitation on meal and entertainment deductions. Consequently, Mr. Decker improperly eliminated significant amounts of the income actually earned by Entity A and Entity B by claiming deductions not permitted by law, and not properly accounting for the income earned by the various entities.

28.     The returns Mr. Decker prepared for Customer 1 failed to account for distributions and wages as required by law. Entity A and Entity B are both S-Corporations whose items of income, deduction, loss or credit must "flow-through" to the shareholder's (i.e. Customer 1's) personal income tax return. Mr. Decker prepared returns for Customer 1 that failed to claim a number of taxable distributions from Entity A and Entity B on Customer 1's individual income tax returns.

29.     In order for Entity A and Entity B to legally claim certain deductions for payments to third-parties, each entity was required to issue Forms 1099 (used to report

such payments) to the payees and also file Forms 1099 with the IRS. Mr. Decker prepared returns claiming deductions for payments to third-parties on behalf of Entity A and B without preparing or otherwise ensuring these information returns were properly prepared and submitted. Additionally, the entities neither issued nor filed the required Forms 1099 for the payments claimed on the returns prepared by Mr. Decker.

*Customers 2 & 3*

30.    Mr. Decker and ABS prepared tax returns for Customers 2 and 3 that used multiple related business entities in such a way as to improperly and significantly lower the tax liabilities of Customers 2 and 3, and further required the IRS to expend significant resources to unwind the illegally prepared returns.

31.    For example, Customer 2, a professional who had multiple locations for his professional practices, and his business partner Customer 3, sold one of their professional practices for a set price and also sold the underlying real estate (i.e. office building) to the same unrelated third-party buyer.

32.    Customer 2 and Customer 3 had previously set up two partnerships, Partnership A that owned the professional practice that was sold, and Partnership B that owned the underlying real estate. Partnership A (professional practice) was actually a partnership between, Entity C, Customer 2's wholly-owned S-Corporation, and Entity D, Customer 3's wholly-owned S-Corporation. Similarly, Partnership B (real estate partnership) was actually a partnership between Entity C (owned by Customer 2) and Entity D (owned by Customer 3).

//

//

//

//

33.    The chart below summarizes the relationship between the entities and the individuals:



34.    When Partnership A received payment for the sale of the professional practice and Partnership B received payment for the sale of the underlying real estate, each partnership had a taxable and reportable event which respectively flowed through to Entity C's (Customer 2's S-Corporation) and Entity D's (Customer 3's S-Corporation) corporate returns, and on to the individual income tax returns of Customer 2 and Customer 3 (i.e. after flowing through the S-Corporations to the individual customer's returns).

35.    Mr. Decker prepared returns for Partnership A (professional practice) and Partnership B (real estate holding partnership), as well as Entity C (Customer 2's S-Corporation) and Entity D (Customer 3's S-Corporation), along with the individual income tax returns for Customers 2 and 3. Each of these six tax returns prepared by Mr.

Decker should have reflected the tax consequences of the sale of the business and real property.

36.     Mr. Decker was given accounting records, including printouts of QuickBooks and a copy of the purchase contracts that he should have used to properly reflect the sale and the appropriate tax consequences on each of the relevant returns.

37.     However, the partnership returns prepared by Mr. Decker did not report the contracted sale prices.  The S-Corporation returns for Entity C and D did not reflect the sale prices, and reported fabricated basis amounts (falsely deflating the amount of gain on the sale). Further, the taxable events that should have flowed through to the individual income tax returns were never reported, and consequently not taxed on the returns prepared by Mr. Decker.

38.     Mr. Decker also prepared tax returns for Customer 2's second professional practice Entity E (another S-Corporation wholly-owned by Customer 2). Customer 2 provided Mr. Decker with accounting records, including QuickBooks statements, profit and loss statements and bank statements. In one audited year, the amounts reported on Entity E's tax returns for employee benefits and outside services did not correspond to the general ledger, and were fictitious amounts. In the subsequent audited year, business expenses of Entity E were inflated by Mr. Decker as being over $200,000, even though the amount listed in the general ledger provided to Mr. Decker was under $25,000.

39.     The returns prepared by Mr. Decker and ABS for entities C, D, and E, along with Partnerships A and B, as well as Customers 2 and 3 took unreasonable positions, and/or willfully attempted to understate the liability for tax on the returns, and/or recklessly or intentionally disregarded tax rules or regulations.

//

//

*Customer 4*

40.     Mr. Decker prepared returns for Customer 4, another professional. Mr. Decker incorrectly advised Customer 4 that he could deduct his student loan principal and interest payments (incurred in prior years) as business deductions. Mr. Decker prepared returns claiming approximately $100,000 in student loan principal and interest payments as investment interest in the first audited year and over $100,000 of payments that included both principal and interest, as being "education interest" in the second audited year.

41.     Mr. Decker also improperly claimed the full amount of Customer 4's personal mortgage payments as a business rent expense. Customer 4 did not operate a business out of his personal residence. Even assuming Customer 4's business was paying "rent" to Customer 4, then Customer 4 would be required to claim these "rent" payments as income on his personal income tax returns. No such rental income was shown on the returns prepared by Mr. Decker.

42.     Businesses that operate under a cash basis accounting method cannot claim bad debt expenses as business expenses. Only a business using the accrual accounting method is permitted by law to take such a deduction. Customer 4's business operated on a cash basis, and Mr. Decker prepared a return for that business that improperly claimed a bad debt expense as a business deduction.

43.     Mr. Decker and ABS prepared returns for Customer 4 that improperly claimed deductions, and these positions were unreasonable, and/or they willfully attempted to understate the liability for tax on the return, and/or they recklessly or intentionally disregarded tax rules or regulations.

//

//

*Customer 5*

44.    Customer 5 is in the business of buying, renovating, and selling (i.e. flipping) houses. Mr. Decker advised Customer 5 to time the purchase of the houses he sought to flip at the end of the calendar year, but then wait to sell the houses until the next year (i.e. buy the house in year 1, sell in year 2). Mr. Decker incorrectly advised Customer 5 that the money Customer 5 spent purchasing the houses was fully deductible in the calendar year that the house was purchased (i.e. year 1), rather than when the house is actually sold (i.e. year 2). The Internal Revenue Code and the associated regulations, require that the acquisition costs related to flipping houses be capitalized (i.e. added to the basis of each respective house), such that those acquisition costs are later factored into determining the actual profit (and income from the sale) whenever the house is sold.

45.    Mr. Decker wrongly deducted the full acquisition costs of two houses in the year the homes were purchased, even though the houses were not sold by Customer 5 in that calendar year. By deducting the cost of the purchases in the earlier year, instead of capitalizing the expenses and deducting the acquisition costs in the following year when each house was sold, Mr. Decker improperly claimed a loss that Customer 5 was not entitled to claim.  That is, Mr. Decker fabricated a loss in an earlier year by claiming acquisition costs for a house that wasn't sold or flipped until the next year.

46.    Additionally, Mr. Decker listed meal and entertainment expenses as advertising expenses to avoid statutory limitations on the amounts of meal and entertainment expenses that can be deducted (i.e. only 50% of certain meal and entertainment expenses can be deducted).

47.    By claiming deductions not allowed by law and hiding expenses in incorrect categories to avoid legal limitations, Mr. Decker prepared returns for Customer

5 that took unreasonable positions, and/or willfully attempted to understate Customer 5's tax liabilities, and/or recklessly or intentionally disregarded tax rules or regulations.

*Customer 6*

48.    Customer 6, a real estate agent, provided detailed monthly category-based expense sheets, along with an annual summary to Mr. Decker for both the 2012 and 2013 tax years. Mr. Decker prepared tax returns for each of these years that included amounts that did not correspond to the summary expense sheets provided to him by his Customer.

49.    Mr. Decker inflated expenses, reporting amounts in excess of those listed on the summary sheets provided. He deducted 100% of meal and entertainment expenses by claiming the amount as advertising expenses, deducted nondeductible life insurance premiums payments, deducted amounts that exceeded the $25 limitation for business-related gifts, and deducted personal expenses, including personal loan payments, as business expenses.

50.    Mr. Decker prepared returns for Customer 6 that ignored the 50% limit on meal and entertainment deductions, ignored the limitations on deductions for business gifts, and for life insurance premium payments, and incorrectly claimed personal loan payments as business expenses.

51.    Mr. Decker inflated the expenses claimed in order to illegally lower Customer 6's income and make Customer 6 ostensibly eligible for the Earned Income Tax Credit (EITC) for each of the years 2012 and 2013. After audit examination, Customer 6 paid back the amounts of the EITC that were improperly claimed, because Customer 6's income was in fact much higher.  Customer 6 was ineligible for this tax credit targeted towards families with lower earned incomes.

//

//

52.    Mr. Decker prepared returns for Customer 6 that took unreasonable positions, and/or willfully attempted to understate Customer 6's tax liabilities, and/or recklessly or intentionally disregarded tax rules or regulations.

*Customer 7*

53.    For Customer 7, an individual that owned a professional practice (S-Corporation), Mr. Decker prepared both corporate and personal income tax returns. Customer 7 gave Mr. Decker copies of QuickBooks printouts for the professional practice to aid in preparing the corporate returns.

54.    Mr. Decker inflated the QuickBooks data by a factor of 10 when claiming deductions for the business. Specifically, an expense for outside services that was listed as approximately $5,000 on the QuickBooks summary was reported by Mr. Decker as being over $55,000 on the S-Corporation's return. For another year, the cost of labor was listed on the summary provided by Customer 7 as under $6,000, but Mr. Decker inflated the expense and reported it as approximately $60,000.

55.    Customer 7 was unaware that Mr. Decker deducted thousands of dollars of Customer 7's personal student loan payments as business expenses. Customer 7 was also unaware of the 50% limitation on deducting meals and entertainment expenses. Mr. Decker had advised Customer 7 that 100% of the meal and entertainment expenses could be, and ultimately were, claimed as deductions.

56.    Mr. Decker prepared returns for Customer 7 that took unreasonable positions, and/or willfully attempted to understate Customer 7's tax liabilities, and/or recklessly or intentionally disregarded tax rules or regulations.

*Customer 8*

57.    Customer 8, the 99% owner of an internet-based company, Partnership C, provided Mr. Decker with bank account statements, Paypal summaries, and American

Express statements for both 2012 and 2013, to prepare both Customer 8's individual returns and Partnership C's return (Form 1065).

58.     For 2012, Customer 8 gave Mr. Decker a summary revenue and expense sheet for Partnership C, listing a detailed amount in gross receipts. However, Mr. Decker understated the amount by $50,000 in the return he prepared for Partnership C.

59.     Mr. Decker prepared his own summary for 2013, ostensibly using the information provided by Customer 8, but still underreported Partnership C's gross income by over $150,000. Additionally, Mr. Decker fabricated a legal fee expense in excess of $400,000 on Partnership C's 2013 partnership return.

60.     Customer 8 was unaware that the gross income reported by Mr. Decker did not match the information the customer had provided to Mr. Decker, and was also unaware that Mr. Decker had fabricated the $400,000 legal fee expense reported on the return.

61.     Adjustments during the audit resulted in over $225,000 in additional tax for the 2013 tax year and an additional tax liability of approximately $45,000 for the 2012 tax year for Customer 8.

62.     Mr. Decker and ABS prepared returns for Customer 8 and Partnership C that took unreasonable positions, and/or willfully attempted to understate Customer 8's tax liabilities, and/or recklessly or intentionally disregarded tax rules or regulations.

## HARM CAUSED BY DEFENDANTS' CONDUCT

63.     Mr. Decker's customers have been harmed by his actions because they paid fees for the preparation of proper tax returns, but Mr. Decker has prepared returns that took unreasonable positions, willfully understated his customers' tax liabilities, and recklessly or intentionally disregarded rules or regulations to improperly claim refunds or credits. Many of his customers may be liable for sizeable penalties and interest.

64.     Mr. Decker and ABS have caused harm to the United States by preparing tax returns that illegally create or overstate his customers' refunds.  Additionally, Mr. Decker and ABS's activities have caused irreparable harm to the United States in that his activities undermine the public confidence in the administration of the federal tax system and encourage noncompliance with the internal revenue laws by encouraging taxpayers to claim deductions to which they are not entitled, and omit taxable income that should flow-through partnerships and S-Corporations to personal income tax returns.

65.     Mr. Decker's and ABS's conduct has further irreparably harmed the United States because the IRS must devote its limited resources to identifying his customers, ascertaining whether they are associated with any of his other customers (i.e. corporate entities, partnerships etc.), and further ascertaining their correct tax liabilities, recovering any refunds erroneously issued, and collecting additional taxes and penalties owed. The expenditure of these resources due to the illegal preparation of tax returns by Mr. Decker and ABS caused irreparable harm to the United States.

**COUNT I: INJUNCTION UNDER 26 U.S.C. § 7407**

66.     The United States incorporates by reference the allegations contained in paragraphs one (1) through sixty-five (65), above.

67.     Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in certain prohibited conduct or from further acting as a return preparer. An injunction is warranted where the preparer's conduct, *inter alia*, includes: (a) engaging in conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695, or subject to criminal penalty provided by the Internal Revenue Code; or (b) engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

68.     In order for a court to issue such an injunction, the court must find (1) that the preparer has engaged in the specified conduct defined in 26 U.S.C. § 7407(b)(1), which includes having engaged in any conduct subject to penalty under 26 U.S.C. § 6694, and (2) that injunctive relief is appropriate to prevent the recurrence of the conduct.

69.     The court may permanently enjoin the person from further acting as a federal tax return preparer if it finds that a preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction (i.e. prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws.

70.     Mr. Decker engages in a variety of fabrications and manipulations to achieve the intended tax results. As described above, Mr. Decker and ABS have continually and repeatedly prepared returns that claimed deductions to which the taxpayer was not entitled, ignored basic principles of tax law by claiming personal expenses as business deductions, ignored limitations on certain types of deductions by hiding the expense in a different category (e.g. avoid 50% limitation on meals and entertainment expenses by listing them as advertising expenses), and manipulated different entities' (partnerships, S-Corporations, LLC) tax returns to try to hide or eliminate income and zero-out customers' tax liabilities.

71.     Mr. Decker and ABS act with the knowledge that the positions taken on the returns they've prepared are unreasonable and lack substantial authority. Mr. Decker and/or ABS have continually or repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694(a), which is conduct described in 26 U.S.C. § 7407(b)(1)(A).

72.     Mr. Decker and ABS have continually or repeatedly engaged in fraudulent or deceptive conduct which has substantially interfered with the proper administration and enforcement of the internal revenue laws, which as conduct described in 26 U.S.C.

§ 7407(b)(1)(B) justifies enjoining Mr. Decker as a tax return preparer under 26 U.S.C. § 7407. Many of Mr. Decker's schemes are implemented in such a way as to require the expenditure of significant resources on the part of the IRS to uncover and correct the various schemes.

73.     Mr. Decker and ABS have continually or repeatedly prepared returns that willfully attempted to understate the liability for tax on the return or recklessly or intentionally disregarded relevant rules or regulations in the preparation of returns, which is conduct described in 26 U.S.C. § 7407(b)(1)(A), and subject to penalty under 26 U.S.C. § 6694(b).

74.     The imposition of penalties and a prior criminal conviction has failed to deter Mr. Decker. Mr. Decker's and ABS's continual or repeated conduct subject to penalty under 26 U.S.C. § 6694 occurred even after the state level criminal conviction for similar conduct.

75.     A more limited injunction would not prevent Mr. Decker's and ABS's interference with the proper administration of the internal revenue laws, given the variety of fabrications and manipulations utilized to achieve the intended tax results, and the prior penalties and criminal convictions failing to deter Mr. Decker.

76.     Mr. Decker and ABS have engaged in the specified conduct defined in 26 U.S.C. § 7407(b)(1) and injunctive relief is appropriate to prevent the recurrence of the conduct.  Further, Mr. Decker and ABS have continually or repeatedly engaged in the specified conduct defined in 26 U.S.C. § 7407(b)(1), and a narrower injunction would not be sufficient to prevent the recurrence of such conduct. Mr. Decker and ABS should be permanently enjoined from further acting as a federal tax return preparer pursuant to 26 U.S.C. § 7407.

//

## COUNT II: INJUNCTION UNDER 26 U.S.C. § 7402(a)

77.     The United States incorporates by reference the allegations contained in paragraphs one (1) through sixty-five (65), above.

78.     Section 7402 of the Internal Revenue Code authorizes a district court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

79.     Mr. Decker and ABS, through the actions described above, have repeatedly and continually engaged in conduct that substantially interferes with the enforcement of the internal revenue laws.

80.     Unless enjoined, Mr. Decker and ABS are likely to continue to engage in such improper conduct and interfere with the enforcement of the internal revenue laws. If they are not enjoined from engaging in return preparation, the United States will suffer irreparable injury by wrongfully providing federal income tax refunds to individuals not entitled to receive them, much of which may never be discovered and recovered. The United States will also suffer irreparable injury because it will have to devote substantial unrecoverable time and resources to auditing Mr. Decker's customers to detect future returns understating customers' liabilities or overstating their refunds.

81.     Enjoining Mr. Decker and ABS is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop their illegal conduct and the harm it causes the United States.

82.     The Court should therefore impose injunctive relief under 26 U.S.C. § 7402(a).

//

//

//

WHEREFORE, Plaintiff, the United States of America, prays for judgment on all counts as follows:

A.     That the Court find that Alfred George Decker and the business, Accountable Business Services, Inc., have continually or repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 and have continually or repeatedly engaged in other fraudulent and deceptive conduct that substantially interferes with the administration of the tax laws, and that injunctive relief barring them from acting as federal tax return preparers is appropriate under 26 U.S.C. § 7407 to prevent recurrence of that conduct;

B.     That the Court find that Alfred George Decker by himself, and through his business Accountable Business Services, Inc., has engaged in conduct that substantially interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

C.     That the Court enter a permanent injunction prohibiting Alfred George Decker, Accountable Business Services, Inc., and all those in active concert or participation with them from:

    i.     Acting as a federal tax return preparer or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

    ii.     Preparing or assisting in preparing or filing federal tax returns, amended returns, or other related documents or forms, that they know or reasonably should know would result in an understatement of tax

20

liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;

    iii.    Owning, operating, managing, working in, investing in, providing capital or loans to, consulting with, or franchising a tax return preparation business;

    iv.    Maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

    v.    Engaging in any other activity subject to penalty under 26 U.S.C. § 6694, or any other penalty provision in the Internal Revenue Code; and

    vi.    Engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws;

D.    That the Court enter an injunction requiring that Mr. Decker, within 30 days of entry of the injunction, contact by United States mail and, if an e-mail address is known, by e-mail, all persons for whom he prepared a federal tax return since January 1, 2012 to inform them of the permanent injunction entered against him, including sending a copy of the order of permanent injunction but not enclosing any other documents or enclosures unless agreed to by counsel for the United States or approved by the Court, and file with the Court a sworn certificate stating that he has complied with this requirement;

E.    That the Court enter an injunction requiring Mr. Decker to produce to counsel for the United States within 30 days of entry of the injunction a list that identifies by name, social security number, address, e-mail address, telephone number, and tax period(s) all persons for whom he or associates working at Accountable Business Services prepared federal income tax returns or claims for refund since January 1, 2012;

21

F.      That the Court enter an injunction requiring Mr. Decker to produce to counsel for the United States, within 30 days of entry of the injunction, copies of all federal income tax returns that he, or associates working at Accountable Business Services, prepared since January 1, 2012;

G.      That the Court enter an injunction requiring Mr. Decker to provide a copy, within 15 days, of the Court's order to all of the principals, officers, managers, employees, and independent contractors of Accountable Business Services, Inc., and provide to counsel for the United States within 30 days a signed and dated acknowledgment of receipt of the Court's order for each person to whom he provided a copy of such Order;

H.      That the Court authorize the IRS, without further proceedings, to immediately revoke any Preparer Tax Identification Number (PTIN) or Electronic Filing Identification Number (EFIN) that is held by, assigned to, or used by Mr. Decker, pursuant to 26 U.S.C. § 6109;

I.      That the United States be entitled to conduct discovery to monitor Mr. Decker and ABS's compliance with the terms of any permanent injunction entered against them;

J.      That the Court retain jurisdiction over the defendants and over this action to enforce any permanent injunction entered against them; and

//

//

//

//

//

//

1    K.    That the Court grant the United States such other and further relief,

2 including costs, as is just and equitable.

3    DATED this 21st day of February, 2018.

4                                          Respectfully submitted,

5                                          RICHARD E. ZUCKERMAN
                                           Principal Deputy Assistant Attorney General
6
                                           *s/ Nithya Senra*
7                                          NITHYA SENRA, CA SBN 291803
                                           Trial Attorney, Tax Division
8                                          U.S. Department of Justice

9                                          ELIZABETH A. STRANGE
                                           First Assistant United States Attorney
10                                         District of Arizona
                                           *Of Counsel*
11
                                           *Attorneys for the United States of America*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

### UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the District of Arizona.

**The completed cover sheet must be printed directly to PDF and filed as an attachment to the Complaint or Notice of Removal.**

**Plaintiff**(s): **United States of America**

County of Residence: Maricopa

County Where Claim For Relief Arose: Maricopa

Plaintiff's Atty(s):

**Nithya Senra , Trial Attorney**
**U.S. Department of Justice, Tax Division**
**P.O. Box 683, Ben Franklin Station**
**Washington, DC  20044**
**(202) 307-6570**

**Defendant**(s): **Alfred George Decker ; Accountable Business Services, Inc.**

County of Residence: Maricopa

Defendant's Atty(s):

II. Basis of Jurisdiction:                **1. U.S. Government Plaintiff**

III. Citizenship of Principal Parties
**(Diversity Cases Only)**

Plaintiff:- **N/A**
Defendant:- **N/A**

IV. Origin :                **1. Original Proceeding**

V. Nature of Suit:                **870 Taxes US Plaintiff or Defendant**

VI.Cause of Action:                **26 USC 7407, 7402(a), Action to permanently enjoin tax return preparers**

VII. Requested in Complaint

Class Action: **No**
Dollar Demand: **-**
Jury Demand: **No**

VIII. This case **is not related** to another case.

**Signature:**  **/s/ Nithya Senra**

**Date:**  **2/22/2018**

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, save this form as a PDF and include it as an attachment to your case opening documents.

Revised: 01/2014